May it please the Court, Justin Cohen on behalf of the Scripps Research Institute, a 95-year-old institution which is the world's largest and most prestigious private… Okay. As a housekeeping matter, is claim one illustrative or representative? Yes, Your Honor. Okay. And where the district court erred in interpreting claim one with respect to little a, is it gave little a the different concepts between different parts of claim one when it ruled that it had to be the same numerical value in the formula. Let me ask you this. In the red brief at 29, Illumina says that you failed to cite any examples where a in the formula paren x, large x, and close paren a, or the length of polymer a is different from the number of chemical units. Well, that… Can you provide an example? Yes, Your Honor. As a matter of fact, in column 11, there'd be one example. I should say from the outset, one of the issues is where Illumina points to the specification is that the preferred embodiment for polymer a is a peptide, and in a peptide, each chemical unit will have one monomer or amino acid. So for the preferred embodiment throughout the specification, the example is one monomer per chemical unit, and yet claim one for polymer a is not limited to peptides. We can look at claim three. But if we look at claim 11 near the bottom… Claim 11 or column 11? I'm sorry. …where it talks about the preparation of the product and lists formulas xn of little a and zn of little a, where a indicates the presence of a polymer of length little a, referencing both x and z in terms of length. And the trouble with Illumina's arguments is where the district court found in footnote 4, appendix 21, that little a is supposed to refer to length for both polymer a and oligo c. There's no dispute that polymer a can be an oligonucleotide, and there's no dispute that in an oligonucleotide, the length is measured by its constituent parts, its monomers, which are nucleotides. And there's no dispute that when you look at the number of nucleotides for an oligo, that number will be more than the number of x's and the number of z's, for example. So when the district court adopted Illumina's construction, it eliminated the majority of the scope of the claim, because it's undisputed that while claim 1 says that little a should be a value of between 4 and 50, under the court's construction proposed by Illumina, that's capped at 11. It is now coextensive with the number of chemical units x and chemical unit identifiers z, which we contend is improper. Can you clarify the following for me? Is it your position that the a after the x needn't be the same number as the a after the z? Correct, Your Honor, that they can be of different lengths. Right, so the column 11, line 55 to 58 you just read seems to me to indicate that a is a single integer for both times it appears in whatever, it's not an equation, whatever that claim-like thing is. That it needs to be a value, a singular value for xn of a, and it needs to be a singular value for zn of a. Okay, let me just try to make my point. It seems to me that the passage you just pointed to, it makes absolutely, I'm going to overstate it, absolutely clear that a is the same each time it appears in that formula. Well, we disagree, Your Honor, because it's referring to length, and consistently through the specification, when the patent talks about the length of polymer a as a peptide, it measures it in amino acids, and when the patent talks about length for an oligonucleotide, it measures it in individual nucleotides. Figure two is a good example, Illumina admits, even in figure two, polymer a as a peptide has a different length than oligo c as an oligonucleotide. As a matter of fact, in figure two, there's three amino acids for x, or I should say for polymer a as a peptide, and 18 nucleotides for oligo c. I'm sorry, I thought, again, I may be misremembering or confusing, I thought that their point is that when you count up the units correctly in figure two, the numbers are exactly the same. And if they, their premise, that argument is premised on the notion that length should be measured in terms of chemical units. Right, but doesn't the, what is it, the column that has expressed language on the, is it on the z side? The z side has the expressed language about the chemical units, doesn't it? I think that's column five at the bottom is most of what Illumina rests its argument on. I'm sorry? The question is, what does connote mean? Well, we believe that connote means that you can determine the number of chemical units. It doesn't mean is. It doesn't mean denote. Right. And it shouldn't be used, essentially, to contradict the expressed definition of column four. Well, if it meant denotes, your case would be substantially injured. It would be substantially if it was denotes. But there is a relationship. For example, if each unit identifier z is a hexanucleotide, so six nucleotides per chemical unit, you know the length is 30 for oligo-C, you can figure out that there's five unit identifiers for z. It seems to me that the case almost turns on what we mean by connotes. I would say that the case... Substantially. Partially, Your Honor. I agree with that. The library reference, your other side has this, the other side has the library reference. You have a ground to distinguish the library reference. The other side then has conventional ways that you write these formulas. And the district court didn't rely on that conventional analysis at all. That was a fact question. It was a dispute on the fact question. It can't come up on summary judgment. So when I was trying to do a decision tree to see where does the rubber hit the road here. It seems to me that the rubber hits the road on connotes. And starts with the proposition that the district court read 83% of the scope of your claim out. And, Your Honor. And your patent makes perfectly clear why from 12 to 50 you care. Yes, Your Honor. These are all the examples of the different lengths. So the patent speaks out volumetrically about why you didn't stop at 11. That's correct, Your Honor. That the patent contemplates polymers of lengths from 4 to 50 units. Those units should be the monomer of each polymer. But it seemed to me also that your argument that the problem here is that 83% of the claim was written out. And the response from your other side was from examples to say, oh, no, no. You don't work either. Their examples simply prove that depending on what you choose to put into the formula, you may or may not get infringement. That's exactly right, Your Honor. How simple is that? Yes. It's not scope. It's whether or not it's an application. Correct, Your Honor. When, for under Scripps construction, first and foremost, I want to say that in looking at the dispute, we asked the court to construe little a in terms that gives the numerical range a its full value from 4 to 50. And to your point, Judge Clevenger, is that there are examples throughout the specification that polymer a is a peptide. And under that scenario, each chemical unit X will have one amino acid to a maximum length by claim one when a polymer a is a peptide of 11. But that doesn't limit the length of the oligo. The problem we have is you've got a patent here and there isn't any indefinite issue that's been raised. But you have a patent where it's certainly everybody agrees that length, everybody agrees that a has to have the same, you're using it for the same purpose. So how do you measure the length? And the patent doesn't expressly tell you up front. By the way, when you measure length, you use monomers. It would have been very easy to say that. Yes, Your Honor. And so, but under, I think the way I take your appeal is that we're taking this case with rules of engagement. And it's claim construction rules of engagement. And one of the rules is that if you read out embodiments, you read down scope, that's, you wonder why you're doing that. You have to have a good reason to do that. Right? That's correct, Your Honor. And so even though one might have wished that the patent team would have given us a clear answer to how you measure, our job is to hunt around in the spec and see if we can figure it out. Yes, partially, Your Honor. And the answer is if we can figure it out, the claim isn't indefinite. There is no indefiniteness argument. I know, there's not one raised at this stage in the game. Yes, but throughout the specification, there are references to length counting the monomers. The length, for example, in column 28 is a good example where it talks about the length of both polymer A and oligos C, measuring it by its individual monomers, amino acids and nucleotides. There's references to the CFR, which the Patent Office requires. So any other references besides 28 to that effect? The sequence listing, Your Honor, starting in column 29, appendix 46. Each sequence listing is counting in terms of nucleotides. And that's what the Patent Office requires through the CFR for both amino acids, that the length is counted by its individual monomer, or I'm sorry, for a peptide, its length is counted by its amino acids, its monomer, and the same for nucleotides, counting in terms of the monomer. So here, I just want to point out, Illumina is actually advocating for construction as if little a is defined separately, conceptually, for polymer A and oligo C, that it's supposed to mean length for polymer A, but it means unit identifiers for oligo C, because there's no dispute that an oligo is measured in nucleotides, and there's no dispute that there's more nucleotides in oligo C than there are numbers of Zs, or unit identifiers. And in our view, a claim construction that gives two different conceptual meanings to the same term, the same claim, is improper, especially in view when it reads out the majority of the expressed scope, in other words, the numerical range for A. And with that, Your My Time for rebuttal. May it please the court. In order to understand how the court ended up in this case where it did, we have to take a step back, and we have to look at what Phillips instructs us to do, which is that the construction that naturally aligns with the patent's description of the invention is likely to be the right construction. So what is the patent's description of the invention? We look at column two, which we can find in appendix 32. It talks about, starting line 55, this alternating construction of a bifunctional molecule. It talks about, first we take our chemical unit, now we're going to start with our polymer, our chemical unit, and then we add a chemical unit identifier, then another chemical unit, so that'll be X1, Z1, then another chemical unit, X2, over here, the chemical unit identifier, Z2. And that is the essence of the instruction, is that for every chemical unit, there is a chemical unit identifier. Without that, there is no invention here. There's nothing new. So now let's look at the polymer, which is defined in this formula, X sub N sub A, and then over here we have the oligonucleotide, which is made up of these individual chemical unit identifiers, Z sub N sub A. So what does little a mean in each of those contexts? In the context of X sub N sub A, the patent is very clear. If we look at appendix 33, column four, lines 39 through 42, it says the length of polymer A. I'm sorry, which column is it? I'm sorry, I'm going to do faster. Column four? Yeah. You can find it in appendix 33, column four, lines 39 through 42. It says the length of polymer A can vary, defined by little a. So now... Lines which? Lines 39 through 42. Let me make sure I've got that citation right, Your Honor. That's right. And so it says right there that it can vary, and it is defined by little a. Then we go... Little a typically is an integer from four to 50. Correct, Your Honor. So it says typically... Not from 11 to 50. No, it says typically four to 50. Now what's interesting is that typically is done in conjunction with, if you look at the line right above that, it says although the length of the polymer may vary, so talking about big A over there, the length of the polymer may vary, defined by little a. Practical library size limitations arise if there is a large alphabet size as discussed herein. Then it says, so typically, little a is an integer from four to 50. In other words, they're kind of capping it out at 50, because otherwise you might get a huge library. Now somehow this typically language ends up in the claim as a limitation. We don't know why, but there it is, tagged on to the end of claim one. So how do we measure the length of polymer A, as represented by little a? Then we go to column nine, lines nine through 11. And column nine specifically says that little a represents the number of chemical units of forming X, of X forming the polymer A, i.e. the length... Which line, column nine? Column nine, your honor, at line nine. Line nine. A is an exponent of E? Yes, your honor, and represents the number of chemical units of X, so each of those chemical units that make up X that forms polymer A, i.e. the length of polymer A. So i.e. means the length of polymer A is the number of chemical units. So that's every single X, X1, X2, X3. And that is exactly what the judge's claim construction is. The judge construed little a in the context of X sub N sub A as representing the number of chemical units forming polymer A. Got it right out of the patent. Undisputed, that's the language. There is not one word in the patent to support Scripps' construction that it should be the number of... Little a represents the number of monomers. There's nowhere, anywhere in the patent that it talks about that. So that's the court's construction of little a in the context of X sub N sub A. Now let's turn to little a in the context of Z sub N sub A. There we have to look at column five. And look if we can at line 63. So now we have Z sub N sub A being described. And specifically it says wherein Z is a unit identifier nucleotide sequence within oligonucleotide C that identifies the chemical unit X at position N. And then it talks about N having a value, et cetera. And then it says little a, it's right at the end of that paragraph, is an integer as described previously. So it's the integer that's between four and 50, to connote the number of chemical unit identifiers in the oligonucleotide. And your honor, Judge Clement, when you hit the nail on the head, it's, okay, well what does connote mean? In this context, it means that it will describe, it logically is the number of chemical unit identifiers in the oligonucleotide. I didn't just say that, instead of saying connote, because connote doesn't have that specific meaning that you were just giving me. Actually, it would be. Would it be analogous to designate? Yes, your honor. Designate, identify, represent, it doesn't say denote and it doesn't say is. We'll give you that. But the reason for connote is that the logic is, if you go back to the invention, the invention is for every chemical unit, you have a chemical unit identifier. So obviously, if little a on the side of polymer A represents the number of chemical units forming polymer A, which we know it does because that's what the patent says at column 9, then obviously little a on the z side connotes the number of chemical unit identifiers in the oligonucleotide. That's just the logic of it because that's the essence of the invention. For every x, there's a z. If we have... So the question is, how do you measure the size of the unit? You measured the size of the chemical unit? That is actually not subject to any kind of a disagreement here. There is a great deal of discussion about the length of... Are there a lot of monomers in a chemical unit? There can be multiple monomers in a chemical unit. But that is... One way you could count the length of units is by asking how many monomers there are. You're absolutely right. I mean, I think that's right. That's where the district court said that Scripps' take on this was understandable and justified. I mean, it's not as if something was just dreamed up in the sky by a history major like Cleveland and dropped in here. So, I mean, their theory has legs, right? Not when it comes to oligonucleotide C. And we just heard it again today in oral argument. The argument was made that if you looked at, I believe, the court asked, give me an example of where the length of oligonucleotide C is measured by the number of monomers. And counsel pointed to column 11, starting line 55, it says, thereafter, the product is aliquoted and cycled as before, resulting in the preparation of a product A, X sub N sub A, linker B, and then P1, Z sub N sub A, anyway, wherein little a indicates the presence of a polymer of length A. The only time length is used in the patent to describe either side of what's on the linker molecule is always in relation to the length of the polymer. It is never, ever used in relation to the length of oligonucleotide C. Well, isn't the elephant in your room that 83% of the scope of the claim is written out? So, you never get to 50, you stop at 11. And that's always true under your claim interpretation and that of the district courtship. So, I mean, the problem I have is that I don't buy your attempt to come to grips with that by providing examples simply to show where, depending on what you throw in to A, you may or may not meet the limitations of the claim. I understand. And the district court doesn't come to grips with this at all. And so, when you play by the rules of engagement and claim construction, and somebody comes along with an interpretation and sort of just chops a claim in half or chops, leaves 17% of the claim there, you're a little suspicious, right? I understood, Your Honor. Sorry, go ahead. Shouldn't I be suspicious if the district court doesn't even recognize this? No, Your Honor, because the district court did recognize it. And didn't say anything about it in the opinion. Actually, the district court did recognize it and discussed it. If one accepts- What did the district court say? The district court talked about, if you accepted- I may have missed that. Scripps construction. Help me out. Yes, Your Honor. I got the opinion here, appendix 11. So, what the district court discussed, there we are. Tell me where they recognize that by, you know, 1 to 11 chops off 12 to 15. Uh-oh. I apologize, Your Honor. The district court didn't explicitly address that issue. What the district court did point out is that- Well, don't you think that's sort of strange? I mean, I'm talking about rules of engagement again. No, because what the district court did was follow Phillips in saying that you have to, whatever construction the court comes up with, has to be consistent with the purpose of the invention. So, to accept Scripps construction, they're trying to read on our accused product. Well, the purpose of the invention is to allow people to identify what type of a chemical might have a positive effect on some particular problem. And then to know who it is because you gave it an ID. Exactly, Your Honor. That's what it's all about. How you go about counting for purposes of the minutiae down in the weeds isn't part of the purpose of the invention. I would beg to differ. The problem here is totally divorced from the purpose of the invention. I would beg to differ, Your Honor. Will you show me where in the patent it says the purpose of this invention is to- Actually, we start right at column two and we look at, go down to line 50 under the brief summary of the invention. It specifically is talking about the present invention provides a way of combining the virtues of both of the chemical and genetical methods summarized above. They talk about how you do all of these. Through the construction of encoded combinatorial chemical libraries in which each chemical sequence is labeled by an appended genetic tag. It's self-constructed by chemical syntheses to provide a retrogenic way of specifying each chemical structure. So in other words, and then it goes on to talk about this parallel method of how you create this bifunctional molecule. For every X, there's got to be a Z. That is the essence of the invention. And that is why the course construction of little a is consistent. The course construction is that a represents the number of chemical units in polymer A, and little a represents- I've heard all of your argument, but I still haven't heard you to explain why it is that I shouldn't be worried about a claim construction that chops 83% of the claim out. Why I shouldn't be worried about that? Because if we accept plaintiff's construction that then doesn't chop it out, what we end up with is an invention that is not this invention. Because if applied to our probe- It's not this invention because it isn't going to succeed in allowing you to identify which particular part of A of the polymer worked. That's not this invention. There are plenty of other inventions that allowed you to do that. This invention allowed you to build a bifunctional molecule, one chemical unit on one side, and then its unit identifier. And their construction allows that. Their construction- Perfectly allows it. Not only allows it, requires it. That's how you do it. Now, the problem when we got here- I think I meant the other side's construction. Did you say that their claim construction allows the alternating process that is the essence of this invention? It allows it until they try to apply it then to our invention. Because if you then take their construction, which is little a represents the number of monomers, so you're okay as long as you've got a chemical unit over here and a chemical unit identifier over here. Now let's apply it, which is what they're doing, to our invention. Our invention, we would have then on this side, it's the number of monomers, we would end up with 50. That would be the- little a would represent 50. And on the z side, if those are allegedly the chemical unit identifiers, which are you count up by the number of monomers, we'd end up with 29. Now we don't have their invention anymore because there's no one-to-one correspondence. We've got 50 monomers over here and only 29- Why does their invention require length to be equal? Their invention is silent on the length of oligonucleotide C. The answer is so what if you've got a different number of monomers on each side of the- who cares? Because you no longer have a one-to-one correspondence. But you can still identify it. The purpose of the invention works. What you'd have to do is have- I mean, it works. Your client's product works. Our client's product works, but not in the way of the claimed invention. Works exactly the same way. It throws at a problem something and that something has its ingredients individually tagged so that when you hit it, bang, you know what hit it. Yes, and here's how we do it. We have one probe. That's X1, and we have one address. That's Z1. So even under their construction then, we would have one- A would be one. Little a would be one on this side, and little a would be one on that side, and we still don't infringe. So either way. So this court would have to find, in order to find infringement, this court would have to find- Because it's counting my monomers. This court would have to find that the court was wrong when the court construed little a in the context of X to represent the number of chemical units forming polymer A, which comes directly from column 9, lines 9 through 11. This court would have to find the court was wrong in construing that or if the court finds it was right in construing that but wrong in construing little a in the context of Z as connoting the number of chemical unit identifiers in the oligonucleotide, which comes right from column 5, lines 63 through 65. If the court was wrong on little a in the context of X but right in the context of Z, we have no infringement. If the court was right in the context of X- I'm less worried about your infringement than I am about the intellectual and legal exercise of interpreting a claim. The point, though, being your argument- The fact that your product may or may not infringe, I mean, as you well pointed out in your reply to their argument about the 83%, depending on what you throw at the problem, you may or may not meet the limitations of the claim. But here we're talking about the court would have to, in order to remand this case, find the court was wrong in interpreting little a in the context of X, even though the court's construction came directly from the patent, was wrong in interpreting little a in the context of Z, even though the construction came directly from the patent, and was wrong in interpreting linker molecule B. So you're basically saying Kenos doesn't mean is and the library reference is distinguished. Actually, the library reference they claim is exemplary. It's not. If we look at the library reference and where it's referenced- I was just saying, when you're telling me what I have to do to write an opinion, I was telling you how one could- Just very quickly, Your Honor, I'm not seeing any lights here. We don't need to argue about what's in the opinion yet. So, Your Honor, the library reference, just to point out, their rebuttal to the library reference is that it's exemplary. It's not. If we look at column 9, lines 7 through 10- It's non-exemplary. It is not exemplary. It comes before the example. So I just wanted to make that very clear, Your Honor. And I don't know if the court wants to talk about linker molecule B or if I should stop there. Thank you very much. Thank you. Your Honor, the trouble with Illumina's argument, as they point out, is that a proper construction will result in infringement, which is why they'd like to maintain the district court's construction. But talking about the rules of engagement, just as this court has rejected a plaintiff's attempt to expand- I don't think they said a proper construction would result in infringement. Well, we believe that a proper construction would give the full range of value to A, such that the length of polymer A or oligo C could be between 4 and 50 monomers. And we would not have a minimum number of chemical units. X is 4, which is also improper under the district court's construction because the patent is silent on a minimum number of chemical units. But chemical units, like unit identifier C, are logical. They're not structural because there can be multiple monomers in each chemical unit. So while Claim 1 is attempting to define the bifunctional molecule in terms of both characteristics and structure, under the district court's construction, it conflates X's to length, which we believe is improper. There's no dispute in Column 4 that the patent defines little a as the length of polymer A. There's no dispute that polymer A can be an oligonucleotide. And there's no dispute that when measuring the length of an oligonucleotide, it's measured by its constituent nucleotides, which in every case will be more than the number of chemical units and chemical unit identifiers. Does your view of the matter reflect the process of alternating construction of the polymer on one side and essentially the genetic tag on the other piece by piece so there's a one-to-one correspondence? There will always be a one-to-one correspondence. I think an important point is Illumina's argument, its premise, mostly focusing on synthesis, on the method or process of building it. Claim 1 is not a method or a process claim. It's essentially an apparatus claim, defining the molecule in terms of its properties and its structure, which also leads to the improperness of the district court adopting the PTAS construction of linker molecule B, which now limits the linker molecule B to a specific polymer, polypeptides, and also includes essentially some synthesis requirement about coupling and decoupling. But Scripps construction preserves the full range of both N, such that there can be 1 to 11 unit identifiers and chemical units, and each could be of a length between 4 and 50 polymers. Can I ask you what may be a completely trivial question? Why did the claim say N equals 1 plus I as I goes from 0 to 10 instead of N goes from 1 to 11? I wish I had an answer, but I can say, in pointing to another error in the district court's construction, it points to little a in the language of Claim 1 as being a as an integer to say that it's both singular and identical for both polymer A and oligo C. But N, as defined through I, is also an integer. But there's no dispute that N is a range between, say, 1 and 11. If there's 11 chemical unit identifiers, there's 11 Xs and 11 Zs on either side. But it's a range. It's not a singular identical value for both sides because this isn't a chemical equation. It's not a mathematical equation. It's defined by its structure. With that, Your Honor, if there's no more questions, thank you very much. Thank you, counsel.